All rise. The Illinois Court of Third Division is now in session. Honorable Justice Bertina Blankenship is resided. Wow, what a big crowd of people here. We have a lot of law students here today. You think everyone can have a seat? Oh, absolutely. Good morning. Good morning. And you can call the first case for us, please. People versus Knight. And the parties can step back. We're going to argue, please. And identify yourselves for the record and who you represent. And let me just say this, and I see we have all the students. I wish we could go on forever today. This is one of the most interesting cases and challenging cases I've had in a long time. But we have something else that we have to do. And so I'm going to have to kind of hold you to your time. We have to be out of here by 1045. So I'm going to give you both a little leeway. So if you just tell me your names and who you represent. Sure thing, Your Honor. My name is Kieran Weiberg. I'm with the Office of the State Appellate Defender. And I'm here representing Taiwan Knight. All right. My name is Amari Dawson. And I am here on behalf of the people of the state of Illinois. Thank you both. What I'm going to do, and I'm going to have to hold you to the time, let you know we've read the briefs, the appeals. We've read the Supreme Court appeals. I think we're all in a state of flux here today. So we're going to give you 20 minutes. But yes, I hope you don't take all of it. And we're going to give you 20 minutes. And I hope you don't take all of it. If you do, I will have to stop at 1045. But I assure you both that all three of us are giving this case considerable attention. All right. And, Counselor, you can proceed. Thank you, Your Honor. And if I may, I would like to reserve maybe five minutes for rebuttal. Absolutely. Thank you very much. May it please the Court.  As Your Honors are, of course, aware, we've raised a single issue in this case in which we have argued that Taiwan Knight's 100-year prison sentence for his role as an accomplice in the first-degree murder of Irvin Shorter is unconstitutionally disparate to the 60-year sentence that was imposed upon his co-defendant and the principal offender in this case, Richard Morris. Now, there is a disparity between these two sentences. It's clear. There's a 40-year difference. However, what the case law tells us is that not all disparities are necessarily unconstitutional. Rather, the Supreme Court has directed us to three factors to consider in this case, or in cases like this. Now, in this case, it's worth noting the circuit court found in ruling on Taiwan Knight's petition that all three of these factors actually favored Taiwan Knight. And I'll touch on each of those, and I will try to be quick, recognizing the Court's schedule. First, the circuit court found, and we believe the record amply demonstrates, that Taiwan Knight was less culpable in this offense than Richard Morris was. Taiwan Knight was an accomplice here. He went along with Richard Morris's plan to commit a robbery. He went along with it when Richard Morris changed the objective of that plan and instead decided that they should hijack Irvin Shorter, whom Morris inaccurately identified as being a drug dealer. And Taiwan Knight was present when Richard Morris shot Irvin Shorter twice and killed him. But Taiwan Knight did not himself kill Irvin Shorter. Taiwan Knight did not tell anyone to kill Irvin Shorter. He was there. He participated in the offense. But he was not the principal. He was a pure accomplice. So, Mr. Weiberg, is there any precedent that would allow us to revisit your client's brutal and heinous finding at this stage? Because, as we know, his conduct was determined to be brutal and heinous by the trial judge. But Mr. Morris, the shooter, was determined by the jury not to have engaged in brutal and heinous conduct. Yes, Your Honor. And I guess I have, in a way, two responses to that. I would say the first is, at this point, we have not, in this petition, simply because it wasn't raised in the petition, we have not challenged that original brutal and heinous finding. As this Court is aware, that was raised on direct appeal. It was ultimately, well, it was reversed and then it came back and it was affirmed based on a finding of harmless error. Now, obviously, we believe that the fact that the next time that a finder, in fact, had the opportunity to consider this, they did not find it brutal and heinous. We do believe that is significant. But, fortunately, in this case, and as this Court's precedent shows, we don't have to go back and revisit that brutal and heinous finding in order to rectify the disparity in sentences here. And that is where we find a case like People v. Arullo so instructive. Because Arullo faced this exact same situation. You had two co-defendants involved in the same offense. In that case, it was found to be an involuntary manslaughter. One of them, there was a finding of brutal and heinous made. The other there was not. And this Court reviewed the evidence and did what courts do when they consider sentencing, which is it looked to the conduct. And this Court said the conduct of each of those co-defendants, to the extent of their participation, was equally brutal and heinous. Their conduct was the same. But this Court didn't go back and try to vacate the brutal and heinous finding in order to try to go back and impose a brutal and heinous finding on the defendant who didn't receive one. Instead, this Court simply addressed the sentence and said, what we can do is we're simply going to vacate the extended term portion of the sentence that was imposed as a result of the brutal and heinous finding. And this is particularly significant because all a brutal and heinous finding does is authorize the possibility. It doesn't mandate it. It just authorizes it. Correct, Your Honor. Exactly. So the Survey Court is able to impose an extended term sentence once that finding has been made. But it is not required. So this Court is not in a box here based on that finding. This Court can look to the conduct involved in the case. And in this case, the conduct, we have Tyler One Knight's conduct of being present while Richard Morris shot and killed Irvin Shorter. So Tyler One Knight is accountable for Richard Morris's actions, yes, and that makes him guilty. But his degree of culpability, if Richard Morris's actions of shooting this man twice are not brutal and heinous and are adequately punished by a 60-year prison sentence, then we argue without question Tyler One Knight's act of being present while Richard Morris did that is adequately punished by a 60-year prison sentence. And to give him 40 years longer for his role simply as an accomplice to this is simply illogical. It doesn't make sense. I will turn then to the second factor that the case law discusses, which is criminal history. Now, in this case, the Circuit Court found, once again, that this factor favored Tyler One Knight and found that Richard Morris had a more serious criminal history. And again, the record bears this out well, specifically and most importantly, because less than 48 hours before he shot and killed Irvin Shorter, Richard Morris beat and strangled another man and murdered him, a man named Fred Jones. And that actually was the motivating act. That was the impetus. Yes, and then he took his body to Chicago and burned it. And this wasn't sort of the impetus for everything that happened. This was why Richard Morris and Brian Hoover wanted to commit a robbery. This was why they then decided to commit a hijacking, because they needed money to get out of town because they had just committed a murder. Now, Tyler One Knight's only criminal convictions up to this point as an adult were for operating a motor vehicle without the owner's permission and reckless endangerment of weapons. Now, obviously, nobody's going to deny those are serious offenses, but they do not compare to the murder of another individual, which Richard Morris had in his very immediate criminal history. And everything else was his juvenile adjudications. Yes, he had some juvenile adjudications, and he had some officer contacts and things like that, but that was all as a juvenile, nothing else as an adult. So we believe there, again, the record adequately shows that Tyler One Knight has the less serious criminal history here. And that brings us to the third factor that courts generally consider, which has to do with rehabilitative prospects. Now, the circuit court found that Tyler One Knight showed greater evidence of his ability for rehabilitation than Richard Morris did. Now, the state has taken issue with this in their briefs and actually argued that this court should find that Knight somehow had lesser prospects for rehabilitation, and it bases that on two points. First, the state points to Richard Morris's argument or Richard Morris's statement during his pre-sentence interview that he wished to continue his education. I think we can all agree education is a fine thing, but the state certainly never found anything even remotely mitigating or any rehabilitative potential in Richard Morris previously. At his first sentencing hearing, they sought and received the death penalty for Richard Morris. At his second sentencing hearing, after that was vacated, he went back, got a new trial. They not only sought the maximum sentence again, they actually argued that the maximum sentence was not good enough and that really he should get an even longer sentence than the maximum. So the state has certainly never seen rehabilitative potential in Richard Morris prior to his death. They also fought him being able to get the benefit of Ryan's... Yes, I know they were opposed to the commutation as well, which was a part, as your honors are aware, of the kind of torture history of this case where we went through a commutation, then ultimately a retrial, and then everything else. But yeah, exactly. So they have certainly never seen rehabilitative potential there before. And the state's second issue with this is a Title IX statement in elocution. Title IX statement in elocution in which he expressed sympathy, condolences for the family of the victim, he did not inculcate himself in the offense. Now, the state may find that... But Morris, he said nothing in elocution. Correct. Richard Morris said nothing at all. And if we're comparing these two individuals and their rehabilitative potential, it would be one thing if Richard Morris had gotten up there and said, oh, my God, I killed this man. I'm so sorry. I never should have done this. Wow, I really, I accept it. That didn't happen. Title IX at least expressed some human feeling toward the families of this victim. Richard Morris said nothing at all. So as we compare the two of these individuals, it's hard to see how Richard Morris, who did murder this individual, who was the motivating force behind all of this, and who said nothing at all in elocution, could be seen as having greater rehabilitative potential than Title IX, who, if we would know, was only 20 years old at the time that this happened. He did have some work history. He was supporting two children. We're not saying he was perfect. But there is at least some evidence there that he had some capacity for rehabilitation, which, as the state repeatedly argued in the circuit court, Richard Morris did not. Now, I will take just a moment to address the case of B. Caballero, I think, because that's something that the state relies very heavily on in their briefs, and I think the comparison is illuminated. So Caballero went through much the same analysis that we've just discussed here, and in that case it started with culpability. And in that case it found that Caballero, the principal defendant that they were dealing with, was equally culpable to his co-defendant. Now, that was well-founded there. Caballero was not an accomplice. Caballero slit the throat of one victim and stabbed him literally until his arm got tired and ordered someone to kill the second victim. He was not an accomplice. He was a principal. This does not bear resemblance to Title IX. Second, the court looks to criminal history. Now, Caballero is a wee bit unique in that there the court did, in fact, find that Caballero had a less serious criminal history but didn't take that into account. But there's an important reason for that. In Caballero, the co-defendant was at large for 10 years after Caballero was arrested. And what the Supreme Court says, we have this vast difference in opportunity to commit offenses here. Had the co-defendant been arrested at the same time as Caballero, he probably wouldn't have racked up this lengthy group of cases. Because he would be incarcerated. Exactly. He would be incarcerated, and probably as Caballero was, he would have been on death row, where even where your opportunity to commit offenses in prison exists, they're even more limited there. So the court found that just under the facts of that case, it just wasn't a useful comparison. And third and finally, the court turned to rehabilitative potential. And in that case, the court did actually find that their rehabilitative potential was roughly equivalent. However, it's important to realize why. Because the Supreme Court found that neither one of them had any rehabilitative potential at all. And again, looking to the facts of that case, multiple murder. Caballero killed one victim, ordered the second victim killed. Not only that, but while the trial proceedings were pending, he attempted to have a witness murdered. And he said in his statement after the offense that if he had it all to do over again, and he thought he wouldn't get caught for it, he would still go back and kill at least one of the victims. So it makes complete sense that the Illinois Supreme Court would look at that and say, this is an individual with absolutely zero rehabilitative potential. We don't have anything like that with Ty One-Night. He did not himself kill. He did not order anyone to kill. He certainly never tried to harm or kill a witness. And he has never said anything at all about wanting to hurt or kill anyone else. So it's interesting just to compare how wildly different these two cases are and why the admittedly somewhat unusual result in Caballero simply does not control here, where we find that this court's decision, as we mentioned earlier, addressing people via Rulo, is much closer to the fact of this case, except that we would note even there, Ty One-Night, again, was a pure accomplice. In Rulo, both Cleese and Rulo were directly involved in beating the individual who eventually died. This court, nonetheless, found that that brutal and heinous finding, that extra term, should not be imposed on Cleese. Ty One-Night did not shoot Irvin Shorter. He did not cause his death. He was not directly involved in causing his death. So we believe that if a, I believe it was a three-year reduction, a three-year difference, that existed in Irulo, if that. Eight and two and a half, right. Yeah, well, it was eight, but I think the eight got reduced to five because they took the extended term portion, if I remember correctly. But if that was a disparate sentence based on their involvement, the 30-year differential between Ty One-Night and Richard Morris, we believe, is unquestionably unconstitutionally disparate. Mr. Weiberg, are you aware of any case law that addresses a situation where co-defendants or those who were similarly situated upon receiving their original sentences were later no longer similarly situated due to resentencing? Your Honor, I have not, myself, in my research, found a case that directly addresses the situation. It is, admittedly, an odd situation, and certainly one that is unusual, particularly because we do have, in the midst of it all, that kind of unique element of the original felony violation, which was then found harmless, but then later the brutal and heinous finding was not made at Richard Morris's trial. But what we would really direct this court to on that is the ultimate purposes of sentencing, and sentencing is ultimately the Constitution that tells us about two things, the seriousness of the offense and the rehabilitation of the offender. If Richard Morris's offense is properly punished by 60 years in prison, Tyrone Knight's offense cannot, in law or logic, be considered more serious than Richard Morris's. It simply cannot be, particularly where he is accountable for Morris's actions. The State has really focused on the different sentencing ranges? Yes. Is there any authority you can point to where folks who are subject to different sentencing ranges were considered similarly situated? Well, at least initially I would point this court to Arula. That was exactly the case there, where one defendant received a brutal and heinous finding and another didn't. So right there we have one. And, again, I think when we look to the way this court addresses these issues, and we look at the way the Supreme Court even addressed Caballero, it's looking at these three factors. It's looking at the conduct, because that's what sentencing is about. A guilt or innocence. An accomplice and a principal are equal. They are both guilty under the law. But when it comes to sentencing, we look at the conduct involved and we look at the potential for rehabilitation. And that is really where the focus properly ought to lie. And here, as noted, it is Morris's conduct that is at issue here. Knight was there. He shouldn't have been there. That was an incredibly bad decision. But he was there. He was present. He agreed to the robbery. But as far as the learner is concerned, his conduct is standing there while Richard Morris does the deed. And, therefore, his conduct cannot be more blameworthy and cannot be worthy of especially such an increased sentence. Lastly, I would just briefly note, we have the one thing that the state has agreed with us in this, is that if you were to decide to grant relief in this case, we have asked this court to go ahead and exercise its authority and vacate the prior sentence and impose a new first-degree murder sentence itself. Just in light of the number of times this case has been up and down and back and forth, but at this point, in the interest of preserving judicial resources and finally bringing this case to a close, we are asking, if there are no further questions, we are asking this court to vacate Tywon Knight's sentence for first-degree murder and to impose a new sentence of something less than the 60 years that Richard Morris received in recognition of Tywon Knight's lesser role in the offense and greater prospects for rehabilitation. Thank you. Any further questions? Thank you very much. Thank you, Your Honor. May it please the Court. Assistant State's Attorney Amari Dawson again on behalf of the people of the State of Illinois. The 145-year sentence imposed on the defendant in this case for the murder of Irvin Shorter was not and is not disparate to that of his co-defendant, Richard Morris. Well, we're not doing the 145 versus, we're doing the 100 versus the 60. Okay. Don't, we're not dealing with the other sentences. Okay. Yes. The 100-year sentence that defendant received for his conviction for murder is not disparate to the 60-year sentence that Morris received for his conviction for murder. Defendant and Morris were both, both received the maximum sentences for their conduct in this crime. Defendant here, as we, or as the Court mentioned, had a finding that his conduct in this matter was brutal and heinous and it was indicative of wanton cruelty as found by the trial court. Logically, how can we possibly see any correlation here between these two people, with one being the shooter and one not being the shooter? Yes. You can see the correlation between the two people because here, defendant was also an active participant. He was not the shooter. However, he armed himself with a .32 revolver when they went out to execute this plan. Defendant made the statement or spoke about how it was Morris who wanted to escape from another jurisdiction to evade prosecution for another murder that had been committed. However, Knight, the defendant here in this matter, it was his vehicle that was used to escape prosecution. Knight was an active participant. Knight drove his vehicle from Wisconsin to University Park, the far south suburbs of Chicago, to go to a relative's house to get his own weapon. Now, Morris already had a weapon. Knight did not have to arm himself with a weapon. And while they were at the relative's house, I believe they may have went to another relative's house to get some sleep before they could execute their plan. It was Knight who woke up the trio to say, hey, let's get started with this plan. And again, he drove his own vehicle to the crime scene where they found him. So are you saying the conduct's about the same? I am. You're not saying Knight's conduct is worse than Morris's, are you? No, I'm not. What I'm saying is Knight is not any less culpable as the court found in Caballero. Can I just, just, it's hard for me to think of them as at all similar, but in this case, the plan wasn't to go and kill this unfortunate gentleman who got killed. The plan was for them to go and rob a bank. It was Morris that changed the plan. Morris saw a victim that he thought was a drug dealer and said, let's, you know, rob this drug dealer with this car. That was a Knight's decision to change the plan. He hooked on to a plan to go and rob a bank, which is an insane thing to me, for me to think of in the first place. But he didn't, his plan was not, or he didn't join in a plan to kill this poor, unfortunate guy that was misidentified as a drug dealer. So that's what I'm saying. Their conduct seems so much different. It's Morris's decision to kill somebody, to, well, first to kidnap someone, to hijack someone, and then to blow their brains out for no reason. Initially, Knight agreed with Morris to execute the plan, to rob the bank. However, when Knight pulled off the highway and they went into the KFC parking lot, at that time he also changed his mind. And he, along with Morris, made a plan to rob that drug dealer. He got out of his vehicle and into the vehicle with Morris. After Morris pointed a gun at Mr. Shorter and made him get in the car, he rode in that vehicle from the south side to the west side of Chicago. And once he found out that Morris wanted to get rid of Mr. Shorter by killing him, he still went along with that plan. They stopped in two separate alleys to find a safe place to rid of Mr. Shorter. Once they got into an alley which they believed was safe, Mr. Shorter was ordered out of the trunk of his vehicle and placed on his knees. And although Morris put the two bullets in the back of Mr. Shorter's head as he pled for his life, Knight stood right by his side. And Knight also had a weapon. And the record shows that that weapon may have not been able to have been fired. So there is no reason that Knight would have continued to have accompanied Morris if he was not a part of the plan to kill Mr. Shorter. He had every ample opportunity to get out of there. But he didn't shoot him. He did not shoot him. No, he did not. But after the crime was committed, Knight still had his own vehicle. He did not get in his vehicle and ride off. I understand that he's accountable because I'm having a hard time with you equating the person who put two bullets in someone's head with the conduct of someone else who stood there and allowed attacks. Ms. Dawson, do you agree that, as Mr. Weiberg stated, sentencing is about the conduct involved in the crime? Yes, sentencing does involve the conduct in the crime. However, what's important in this matter is that Knight and Morris faced different structuring, different sentencing structures which made them not similarly situated. And because they are not similarly situated, then defendant claim fails. Well, they initially were similarly situated in terms of the sentences. Because they both got the maximum sentence. Exactly. One got death. So the initial sentencing range was the same. The only thing that happened with Mr. Morris was Ryan, Governor Ryan, decided to commute everyone's death sentence and give them a natural life sentence. And then the state fought that when they wanted to still give Morris the death penalty. And the courts, I think, I guess the Supreme Court said no. And so that, he got in a situation where he could only get 60 years just because of the fortuity of the circumstances. But initially they could both get the same thing. Correct. And not only did Morris only face a 60-year maximum sentence due to the commutation of the death sentence, he also faced a 60-year maximum sentence because there was no finding of brutal and heinous. And at this time, what's important is when there was a finding for defendant's conduct, it was made by a judge. The court. When there was no finding of brutal and heinous conduct, it was made by a jury. And because that finding was made, then he was not subjected to a longer sentence. So although defendant said that Arillo is instructive in this matter, Arillo is not really instructive. Because in Arillo, there was only one fire effect and only one person responsible for those findings. And so when Arillo appealed his case based upon excessive sentencing, the court then found that both of their conduct was the same. Their participation level was the same. And so that there should have been a finding of brutal and heinous for both defendant and his co-defendant in that matter. The court did reduce the sentence of police. However, as noted before, the sentence was not reduced to equal that of his co-defendant. And the sentence here should not be reduced. Arillo is not instructive. Caballero is what is instructive in this matter as it relates to the level of culpability, the potential for rehabilitation, and the criminal history. However, Caballero nor Arillo dealt with the unique fact pattern that we have here, which describes the sentencing structure. This is no different than if, for some reason, defendant would have had a bench trial and would have been found guilty, and Morris would have had a jury trial and would have been found not guilty. The court would not have had any recourse. There is nothing we could do. There was a not guilty and a guilty. Here we have two guilties with 40-year difference in their sentencing for a less culpable person. Correct. But they were sentenced both to maximum sentences under their sentencing structure. They are not similarly situated. It's no different than if, say, someone who was sentenced 100 years ago, the laws changed, they evolved, and Morris happened to reap the benefit of the changing law. That does not automatically entitle the defendant to receive the same, unfortunately, in this matter. Also, you agree with defense counsel that this was probably a single course of conduct, is that correct? No, I do not agree with that. Now, the state agreed that there was a single course of conduct. Now, if you ask me, was it a single course of conduct? Wait a minute. The state agreed that there was a single course of conduct. Correct. And you're the state. Maybe I'm not clear. I'm sorry. I misstated what I meant to say. Okay. I am the state, and we are one entity. So, yes, the state agreed that there was a single course of conduct. However, what's important is that when the matter was remanded to the circuit court to make sure whether the sentences were meant to be concurrent or consecutive, the court clearly stated that the sentences were meant to be consecutive sentences. And because the sentences were meant to be consecutive sentences, the court struck the conviction on count 17, entered the conviction on count 47, which made it not a single course of conduct, but which made it armed kidnapping with a deadly weapon so that the sentences could be consecutive. So do not let the defendant mislead you. The sentences were meant to be consecutive. They were affirmed that they were meant to be consecutive. Not affirmed, but there was no appeal upon that decision, and it should not be brought before this court. The trial judge didn't really follow the appellate court's mandate, though.  Right? The trial judge didn't. The mandate was, tell us whether or not you think this was a single course of conduct. And he didn't. He just said, I meant those sentences to be consecutive. And so do you think there's any way we could revisit that? Because I think the defendant argues that, you know, we should just say, since it didn't follow our mandate, we can do what we want with declaring that it was a single course of conduct. No, it's res judicata, first and foremost. So, no, unfortunately, I don't believe it's my position. Fundamental fairness allows us to revisit cases on res judicata. But I don't think anybody's asked for that. Maybe I'm wrong. I'll have to look back at the briefs. I'll have to remember that. Okay. Yes, and although the court didn't specifically say that this is a single course of conduct or that this is not a single course of conduct, the court implicitly said that this is not a single course of conduct. And that's why I'm answering the conviction on count number 27, that he was armed with a deadly weapon so that the conviction could stand, as the court meant it to stand, for consecutive sentencing, the maximum sentencing, as to be found with his co-defendant. Also, as it relates to the similarly situated in the sentencing structure, case law does show that when defendants are not similarly situated, they are not similarly situated when they do not face the same sentencing structure. For example, in Wyatt, the defendants, there were three defendants who escaped the Winnebago County jail. One was subject to class X sentencing due to his background, and the other two were subjected to extended sentencing due to their background. The court found that it was not similarly situated. In the cases of Burke and Zabo, where the defendants received death sentences, the court found that although the juvenile co-defendants received prison sentences, that it was not this way because juveniles were not subjected to the same sentencing structure, and they were not similarly situated. And here we speak about the 40-year gap. But if you look at Zabo, the defendant received the death sentence, and his co-defendant only received four years. So if that's not disparate, we can't say that just because there's a 40-year gap in the murder sentences of the defendant and his co-defendant, that the sentences were disparate. And the state would ask that you find that. But it's not. For these reasons and the reason, prior to that, let me go to the level of culpability and the potential for rehabilitation and the criminal histories to show that they also were not similarly situated. The criminal histories, they both have substantial backgrounds post-conviction court found. And although the defendant would like to highlight that most of his trouble with the criminal justice system were juvenile adjudications, nevertheless, he had a violent background. And although the post-conviction court stated that Morris' background was more substantial, this factor did not carry much weight as it did in Cavallaro. In Cavallaro, as the defendant mentioned, the defendant had one misdemeanor sentence, one misdemeanor conviction, and the co-defendant, who was down on the lam for 10 years or so, had the three felony convictions. So, therefore, that court didn't look at that in particular. What the court did was took an analysis of the three factors of the potential for rehabilitation, the criminal history, and the level of culpability. So when it comes to the potential for rehabilitation, the defendant would present that he showed more of a potential for rehabilitation. The court found, the post-conviction court found that there was some potential for rehabilitation because he did in allocution make an apology to the family. However, the court noted, and I ask you to note, that the defendant's apology wasn't really or didn't appear to be sincere to the court and does not appear to be sincere to the state. What the defendant said is, I apologize for what I may or may have not done in that particular situation. So, therefore, that's all we have is his statement in allocution and Morris' statement that he wanted to obtain a degree. That factor should also not carry much weight. But when we talk about that level of culpability, importantly, Knight is not any less culpable. No, he was not the shooter in this matter. Now you're repeating. You don't have to repeat. Okay. Yeah, don't, yeah. Okay. Well, for these reasons and the reasons stated in our brief, we would ask this honorable court to affirm the third stage dismissal. Thank you. Thank you. Thank you, counsel. Thank you, Your Honor. May it please the court. I'll try to be relatively brief here. There's a few things that here need touching on. The state pointed to cases where one defendant had a Class X sentence and others didn't, and another case where there was a juvenile and an adult. Well, these are cases where the law, A, mandates different sentencing. Class X is an entirely different range than Class 1. So that's the first issue. It's not a matter of where you could give the same sentences. It's a different range altogether, and it's required to be. Second, of course, Class X sentencing is based upon one of the factors that we consider in disparate sentencing cases, which is criminal history. It has to do with the defendant and with their level of culpability, with their prospects for rehabilitation. That is not the case here. Instead, here what we have is a finding by the circuit court on all three factors, that Taiwan Night was, that all of these factors favored Taiwan Night. I would like to also just briefly note, Your Honors, if we look at the entirety of the state's argument here as just presented to this court and as presented in their brief, the most that they have claimed, and we certainly disagree with this as we have today and in our briefs, the most that they have claimed is that Night and Morris are kind of the same, which would still not offer any justification for Night receiving 40 years more. Maybe that would be a justification for Night having 60 years also, but it certainly does not argue in favor of giving him 40 years more than Morris, and we do, of course, disagree with the contention that the man who stood there, who went along with a plan, went along with a plan by someone who, by the way, he knew had just murdered somebody else less than 48 hours before. There is more than one reason why Taiwan Night might not have gotten up and run as soon as this plan turned bad, because Richard Morris was carrying a gun and had just killed someone. But leaving that aside, the idea that by standing there while someone else pulls somebody out of the trunk of a car and shoots them, yes, you are guilty. You are not equally culpable. And we have cited a lot of precedent on the role of accomplices via the role of principals and how that differs in levels of culpability. I would also note that this argument, I would turn briefly to the matter of concurrent versus consecutive sentencing. We have argued that this court obviously has the inherent authority to enforce compliance with its own mandate, but we would also note that given the nature of the relief sought in this case, were this court to grant relief and vacate Taiwan Night's sentence for first-degree murder, it then has to impose a new sentence, and of necessity a determination needs to be made whether that sentence, because that is the sentence that is in question for concurrent and consecutive sentencing, a determination necessarily needs to be made whether that sentence should be concurrent or consecutive once the original sentence has been vacated. So we believe this issue is already in play before this court, just due to the nature of it. So you're saying you're not asking just to vacate the one, well, if you vacate the 100-year sentence, then the entire sentence goes out? No, Your Honor. It's that the consecutive and concurrent issue relates solely and importantly to the first-degree murder sentence. That is the sentence that the consecutive versus concurrent issue revolves around. And so we would say that, therefore, if this court vacates the original first-degree murder sentence and is entering a new first-degree murder sentence, there needs to be a determination if that first-degree murder sentence is to be consecutive or concurrent to the already established other sentences in this case. And for all the reasons we've discussed, and the State still in its brief and today has not contended that this was not a single course of conduct, I would note there was some reference to a change in the counts for which a judgment was found. Notably, that might have made a difference in whether one of the offenses was a lesser-included offense of the first-degree murder. It does not make a difference in whether it was a single course of conduct. We'll have to go back and look at the record on that for sure. Right. But it was, I mean, this was clearly a continuous criminal act. They went to perform a robbery. They hijacked a man. In that car, there was no break in the activity. They took that car, and then presumably to get rid of a witness to the hijacking that was in process, which were more a shot or a shorter and killed him. So this was, we believe, pretty clearly a single course of conduct. At this point, I realize we are getting close. If Your Honors have any other questions, I would, of course, be happy to answer them. No more? No more. Thank you. All right. Well, thank you, Your Honors, and thank you for your time. You're welcome. And I'm really happy to say that we have, see that we have all of these students here. We've got just a minute. Where are you from? Where are the students from? University of Illinois. Ah. Oh. Yes. I wonder why. Okay. All right. They're not all from the University of Illinois, I don't think. They're all Go-Stats students. Where? I'm sorry? These are Go-Stats students. Oh. These are Go-Stats students.  Other universities? Law schools? Yeah. I'm from Loyola. UIC. California. Northwestern. Oh, my gosh. University of Michigan. How did you guys hear about this case? You don't say. You don't say. Okay. All right. Wonderful. Well, this will be the last thing I say. Read the record and never do anything that the judge did wrong. If you ever get in that position and if you're, well, if you're a lawyer representing somebody, don't make all the horrible errors that the lawyers, in this case, for both defendants, made. This is, there's a phrase that's called the comedy of errors. This is not a comedy at all. These are people's lives, and lawyers and judges should not be making the mistakes that were made in this case. With that, we're going to stand in recess, and we will have a decision for you soon.